﻿Citation Nr: 18107546
Decision Date: 06/04/18 Archive Date: 06/02/18

DOCKET NO. 14-43 761
DATE: June 4, 2018
ORDER
A 20 percent rating for a lumbar spine disability is granted, subject to the laws and regulations governing the award of monetary benefits.
Entitlement to an initial rating in excess of 10 percent for a left hip disability is denied.
Entitlement to an initial rating in excess of 10 percent for a right hip disability is denied.

REMANDED
Entitlement to total disability rating based on individual unemployability (TDIU).
FINDINGS OF FACT
1. Range of motion testing of the Veteran’s lumbar spine has shown forward flexion functionally limited to between 31 and 60 degrees; and ankylosis of the spine was not shown. The Veteran has not been shown to have been prescribed bed rest to treat his service connected back disability during the course of his appeal.
2. The Veteran’s left hip disability results in extension limited to 5 degrees or less. It does not result in any ankylosis, hip flail joint, impairment of the femur, limitation of rotation to 15 degrees, adduction so limited as to prevent the Veteran from crossing his legs, limitation of abduction beyond 10 degrees, or flexion limited to 45 degrees or less. 
3. The Veteran’s right hip disability results in extension limited to 5 degrees or less. It does not result in any ankylosis, hip flail joint, impairment of the femur, limitation of rotation to 15 degrees, adduction so limited to prevent the Veteran from crossing his legs, limitation of abduction beyond 10 degrees, or flexion limited to 45 degrees or less. 
CONCLUSIONS OF LAW
1. The criteria for a 20 percent rating for the Veteran’s lumbar spine disability, but no higher, have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1-4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5237, 5243.
2. The criteria for an initial rating in excess of 10 percent for a left hip disability have not been satisfied. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1-4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5003, 5019, 5250-5255.
3. The criteria for an initial rating in excess of 10 percent for a left hip disability have not been satisfied. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1-4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5003, 5019, 5250-5255.
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
The Veteran had active military service from July 1979 to May 1986. In October 2017, the Veteran testified at a Board hearing before the undersigned Veterans Law Judge (VLJ). A transcript of the hearing is of record. At that examination, the Veteran waived AOJ consideration of the Social Security Administration (SSA) records and VA examinations that were being sought.
In determining claims for increased ratings, disability ratings are determined by applying a schedule of ratings that is based on average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C. § 1155; 38 C.F.R., Part 4. Each disability must be viewed in relation to its history and the limitation of activity imposed by the disabling condition should be emphasized. 38 C.F.R. § 4.1. Examination reports are to be interpreted in light of the whole recorded history, and each disability must be considered from the point of view of the Veteran working or seeking work. 38 C.F.R. § 4.2. Where there is a question as to which of two disability evaluations shall be applied, the higher evaluation is to be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating is to be assigned. 38 C.F.R. § 4.7. 
The Veteran was granted service connection for his low back disability in a February 2011 rating decision. The Regional Office (RO) assigned a 10 percent rating effective October 5, 2010, the date the Veteran’s claim for service connection was filed. The same rating decision also denied service connection for the Veteran’s right and left hips. The Veteran appealed both the initial back rating and the denial of service connection for his hips. The RO subsequently granted service connection for each of the Veteran’s hips, and assigned each a 10 percent rating for each, also effective October 5, 2010. The Veteran perfected appeals on the initial ratings of his back and each hip. He asserts that he is entitled to ratings in excess of 10 percent for each of these disabilities. 
Entitlement to an initial disability rating in excess of 10 percent for a lumbar spine disability
VA regulations dictate that a back disability is to be rated under either the General Rating Formula for Diseases and Injuries of the Spine or the Formula for Rating Intervertebral Disc Syndrome (IVDS) based on Incapacitating Episodes, whichever method results in the higher evaluation when all disabilities are combined. 38 C.F.R. § 4.71a, Diagnostic Code 5243.
Under the current Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes, a 10 percent rating is assigned when IVDS causes incapacitating episodes having a total duration of at least one week, but less than two weeks, during a 12-month period on appeal. A 20 percent rating is assigned when IVDS causes incapacitating episodes having a total duration of at least two weeks, but less than four weeks, during a 12-month period on appeal. A 40 percent rating is assigned when IVDS causes incapacitating episodes having a total duration of at least four weeks, but less than six weeks, during a 12-month period on appeal. A 60 percent rating is assigned when IVDS causes incapacitating episodes having a total duration of at least six weeks during a 12-month period on appeal. Id.
An incapacitating episode is a period of acute signs and symptoms due to IVDS that requires bed rest prescribed by a physician and treatment by a physician. 38 C.F.R. § 4.71a, Diagnostic Code 5243, Note (1) (emphasis added). 
The evidence of record does not show that the Veteran has, or has ever had, a diagnosis of IVDS. Moreover, there is no suggestion he has ever been prescribed bed rest. As such, a rating in excess of 10 percent is not warranted under this Formula, and the General Rating Formula for Diseases and Injuries of the Spine will be used to determine whether an increased rating for the Veteran low back disability is appropriate. 
Under the General Rating Formula for Diseases and Injuries of the Spine, a 20 percent evaluation is warranted if forward flexion of the thoracolumbar spine is greater than 30 degrees, but not greater than 60 degrees; when the combined range of motion of the thoracolumbar spine is not greater than 120 degrees; or when muscle spasm or guarding is severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. A 40 percent evaluation is warranted if forward flexion of the thoracolumbar spine is 30 degrees or less or there is favorable ankylosis of the entire thoracolumbar spine. A 50 percent evaluation is warranted if there is unfavorable ankylosis of the entire thoracolumbar spine. A 100 percent evaluation is warranted for unfavorable ankylosis of the entire spine. 38 C.F.R. § 4.71a, General Rating Formula for Diseases and Injuries of the Spine, Diagnostic Code 5242.
Normal ranges of motion of the thoracolumbar spine are flexion from 0 to 90 degrees, extension from 0 to 30 degrees, lateral flexion from 0 to 30 degrees, and lateral rotation from 0 to 30 degrees. 38 C.F.R. § 4.71, Plate V. Furthermore, fixation of a spinal segment in neutral position (zero degrees) always represents favorable ankylosis. 38 C.F.R. § 4.71a, General Rating Formula for Diseases and Injuries of the Spine, Diagnostic Code 5242, Note (5).
The Veteran was afforded a VA examination in December 2010. He reported that the level of his lumbar spine pain was a six out of ten and that his bilateral hips were painful secondary to his spine. He denied having any numbness, tingling, tremors, or loss of sensation in his lower legs and did not have any radiating pain at the time of the examination. The Veteran did not use any assistive devices and he denied experiencing any incapacitating episodes. He also denied any mechanical pain of locking, clicking, or popping in either hip. The Veteran was not having any bowel or bladder dysfunction and was able to walk half a mile. He was working for a security company. On examination, the examiner noted normal sensation and indicate that straight leg tests were negative. Range of motion measurements were as follows: flexion to 85 degrees, extension to 30 degrees, right lateral flexion to 28 degrees, left lateral flexion to 28 degrees, right lateral rotation to 35 degrees, and left lateral rotation to 35 degrees. The examiner noted that there was no change in range of motion after three repetitions. 
The Veteran was afforded another VA examination for his lumbar spine in December 2011. A diagnosis of chronic lumbar strain with right sided SI joint dysfunction was noted as having been rendered in 1982. The Veteran reported his back had gotten worse and he was receiving injections for the pain. He denied flare-ups, but did indicate that his back was constantly hurting. Range of motion measurements were as follows: flexion to 90 degrees or greater, with painful motion at 70 degrees; extension to 20 degrees, with painful motion at 25 degrees; right lateral flexion to 20 degrees, at which point painful motion began; left lateral flexion to 20 degrees, with painful motion at 15 degrees; right lateral rotation to 25 degrees, with painful motion at 20 degrees; and left lateral rotation to 25 degrees, with painful motion at 20 degrees. Repetitive-use range of motion measurements were also taken after three repetitions. After repetitive-use, range of motion measurements were as follows: flexion to 85 degrees, extension to 30 degrees or greater, left lateral flexion to 20 degrees, right lateral flexion to 20 degrees, right lateral rotation to 25 degrees, and left lateral rotation to 25 degrees. The examiner did not state whether the Veteran had functional loss, functional impairment, and/or additional limitation of range of motion after repetitive use. The examiner also noted that the Veteran had guarding and/or muscle spasm present, but they did not result in either an abnormal gait or an abnormal spinal contour.
The December 2011 VA examiner also noted that all sensory examinations of the lower extremities were normal, straight leg raising tests were normal bilaterally, no radiculopathy symptoms or other neurologic abnormalities were present, and the Veteran did not have IVDS. The Veteran did not use any assistive devices and no other pertinent physical findings were noted. The examiner found that the Veteran’s lumbar spine condition impacted his ability to work in that he would have to avoid lifting/carrying/pushing/pulling greater than 20 pounds. The Veteran was employed in hospital security. Finally, the examiner remarked that the Veteran’s lower back condition was worsening and of a moderate severity.
The Veteran underwent another VA back examination in October 2017. The examiner again noted a diagnosis of chronic lumbar strain with right-sided SI joint pain. The Veteran reported his back was sore and stiff with stabbing sharp pain making him unable to obtain a comfortable position. He reported right leg pain which would shoot down his leg, but was inside the bone, and he felt he had full sensation in his legs, with limited strength due to his stabbing back pain. The Veteran also reported having flare-ups of his lumbar spine, such that lifting, carrying, walking, standing, or sitting for more than a few minutes would cause his back pain to become sharper. The Veteran stated he was having a functional loss or impairment due to the pain decreasing his range of motion. 
On examination, range of motion measurements were as follows: flexion to 70 degrees; extension to 15 degrees; bilateral lateral flexion to 20 degrees; and bilateral lateral rotation to 25 degrees. The examiner stated that the range of motion contributed to functional loss in that the Veteran’s motion was limited by pain, which was noted on all ranges of motion. There was evidence of pain with weight bearing and objective evidence of moderate pain on palpation of the low back and right SI joint. The Veteran was able to perform repetitive use testing with at least three repetitions without any additional loss of function or range of motion. The examination was not conducted during a flare-up, but the examiner was able to determine that pain significantly limited functional ability with flare-ups. Flare-up range of motion measurements were determined to be as follows: flexion to 60 degrees; extension to 10 degrees; bilateral lateral flexion to 20 degrees; and bilateral lateral rotation to 15 degrees. The examiner found that the Veteran did not have guarding or muscle spasm of his lumbar spine or any other contributing factors of disability. All muscle strength tests were normal and no atrophy was found. All reflexes were also normal, as were all sensory examinations. Straight leg raising tests were negative bilaterally and the Veteran had no signs or symptoms of radiculopathy, nor did he have ankylosis of the spine. The examiner stated the Veteran did not have other neurologic abnormalities related to his low back disability, did not have IVDS, and did not use assistive devices to help with locomotion. The examiner concluded that the Veteran could not be expected to have employment which involved lifting and carrying due to his back pain, and that the back was mild to moderate in severity. The back symptoms were all in the back and no radiculopathy was found on examination. 
The Veteran underwent a comprehensive musculoskeletal examination in January 2015 for his Social Security Administration disability application. The examiner noted lumbar range of motion was limited by pain, such that flexion was to 20 degrees. 

Private treatment records from the appeal period were reviewed and showed that the Veteran was treated for his back pain and hip pain, which was worse in the right hip, with physical therapy, injections, and medication. At some visits, the Veteran reported the pain was radiating down his lower extremities. Range of motion measurements were performed, and lumbar flexion measurements were noted to be as follows: 48 degrees on October 21, 2010; 46 degrees on January 10, 2011; 60 degrees on March 8, 2011; and 56 degrees on April 16, 2012. In addition, a provider noted in September and November 2011 treatment notes that the Veteran exhibited normal range of motion of the lumbar spine. In May 2012, a provider noted the spine range of motion was “quite full” to flexion and full to extension, but consistently painful.

The Veteran testified before the Board in October 2017 about his low back disability. He reported that his back pain made it uncomfortable for him to move or sit, so much that he would feel like he was sitting on glass, and it would radiate around to the hips. It prevented him from sleeping because he could not lie down comfortably.
The Veteran also submitted multiple written statements in support of his claim. In October 2011, the Veteran submitted a statement in which he asserted that his back condition had worsened. The Veteran submitted another statement in December 2011, wherein he wrote that he lived with pain at a level of at least seven out of ten all of the time. The pain in his back and hips was constant. The Veteran’s wife also submitted a statement in December 2011. She reported seeing her husband’s pain increasing to the point where it had become quite debilitating. She described difficulties he had going to church, to the grocery store, and doing tasks around the house. She also stated that he tended to downplay the severity of his pain to doctors if she was not with him. The Veteran submitted another written statement in September 2013. He reported that the pain in his back and hips had gotten even worse over the previous year. Sitting, standing, and walking were all incredibly painful for him. The Veteran also wrote in his formal appeal to the Board in December 2014 that his condition had gotten worse. He stated that his back and hip pain had increased and he had neuropathy in his bilateral lower extremities that he believed was caused by his back and hip conditions. 
During the appeal period, with the exception of the SSA examination the Veteran demonstrated flexion of the thoracolumbar spine of 31 to 60 degrees. Measurements in this range were consistently shown in private treatment records, and flexion of 60 was shown on VA examination in October 2017 as representative of the loss of motion the Veteran experienced during flare-ups. The Board finds that flexion of the thoracolumbar spine has not been functionally limited to 30 degrees or less during the course of the Veteran’s appeal.
In reaching this conclusion, the Board acknowledges the January 2015 musculoskeletal examination in which lumbar flexion was found to be limited to 20 degrees. However, this measurement is so inconsistent with the numerous range of motion measurements taken both before and after that date, that the Board simply cannot afford it any probative weight. In fact, flexion is more than 20 degrees less than any other measurement during the course of the appeal. Furthermore, there is no indication that a goniometer was used to obtain this measurement, as is required for range of motion measurements used for assigning VA disability ratings. As such, the Board finds this highly inconsistent measurement weakly probative, at best, as to the severity of the Veteran’s lumbar spine disability symptoms. Additionally, the Board finds that the Veteran never exhibited ankylosis of the spine. Based on the foregoing, the Board finds that the Veteran has met the schedular rating criteria for a 20 percent rating, but no higher, for a lumbar spine disability. 
In evaluating disabilities of the musculoskeletal system, it is necessary to consider, along with the schedular criteria, functional loss due to flare-ups of pain, fatigability, incoordination, pain on movement, and weakness. DeLuca v. Brown, 8 Vet. App. 202 (1995). Functional loss may be due to due to pain, supported by adequate pathology and evidenced by visible behavior of the claimant undertaking the motion. 38 C.F.R. § 4.40. Weakened movement, excess fatigability, incoordination, pain on movement, swelling, deformity, or atrophy of disuse are relevant factors in regard to joint disability. 38 C.F.R. § 4.45. Even if range of motion was slightly limited by pain, pain alone is not sufficient to warrant a higher rating, as pain may cause a functional loss, but pain itself does not constitute functional loss. Mitchell v. Shinseki, 25 Vet. App. 32 (2011). Rather, pain must affect some aspect of “the normal working movements of the body” such as “excursion, strength, speed, coordination, and endurance,” in order to constitute functional loss. Id.
The weight of the evidence indicates that the Veteran’s lumbar spine disability has not been so functionally limited as to warrant a rating in excess of 20 percent. For example, in December 2010, the VA examiner noted that there was no change in range of motion after three repetitions. In December 2011, the VA examiner noted that the Veteran exhibited pain on flexion beginning at 70 degrees, and, after repetitive use, flexion was lowered from 90 to 85 degrees. Although the Veteran exhibited additional limitation of motion after repetitive-use and due to pain on motion, pain was not shown to effectively reduce flexion to 30 degrees or less. In October 2017, the VA examiner stated that lumbar flexion was 70 degrees, but, during a flare-up, it was limited to 60 degrees. The Board considered this 60 degree limitation of flexion measurement in assigning a 20 percent rating, as discussed previously. However, an additional functional loss has not been shown which would warrant a rating above 20 percent. While the Veteran clearly experiences pain on range of motion, the pain has not been shown to effectively limit the forward flexion in his back to 30 degrees or less. 
Further, a separate compensable rating is not warranted for neuropathy secondary to the Veteran’s lumbar spine disability, despite the Veteran’s December 2014 statement that he was experiencing it. The subsequent October 2017 VA examination found that the Veteran did not have any neurologic impairment as a result of his service connected back disability, and the Veteran also denied the neuropathy on examination.
Here, as described, the weight of the probative evidence demonstrates that the Veteran is entitled to a disability rating of 20 percent, but no higher, for a lumbar spine disability. As such, a disability rating of 20 percent, but no higher, for a lumbar spine disability is granted.
Entitlement to initial disability ratings in excess of 10 percent for bilateral hip disabilities
The Veteran’s bilateral hip disabilities, specifically, his bilateral hip trochanteric bursitis, have been evaluated analogously under 38 C.F.R. § 4.71a, Diagnostic Code 5019, which is applicable to bursitis. Diagnostic Code 5019 requires that bursitis be rated on the basis of limitation of motion of affected parts as degenerative arthritis under Diagnostic Code 5003.
Diagnostic Code 5003 provides that degenerative arthritis established by X-ray is rated on the basis of limitation of motion under the appropriate Diagnostic Codes for the joint involved, which in this case is the hip and thigh. Diagnostic Codes 5250 to 5255 govern disability ratings for these joints. Of these Codes, only 5251, 5252, and 5253 provide ratings on the basis of limitation of motion when ankylosis is not present, as is the case here. Normal range of motion of the hip is 0 to 125 degrees of flexion and 0 to 45 degrees of abduction. 38 C.F.R. § 4.71a, Plate II.
Diagnostic Code 5251 provides that a 10 percent rating is warranted for extension of the thigh limited to 5 degrees. 38 C.F.R. § 4.71a, Diagnostic Code 5251. 
Diagnostic Code 5252 provides ratings based on limitation of flexion of the thigh. A 10 percent disability rating is for flexion of the thigh that is limited to 45 degrees. A 20 percent rating is for flexion of the thigh that is limited to 30 degrees. A 30 percent rating is warranted for flexion limited to 20 degrees. A 40 percent rating is warranted for flexion limited to 10 degrees. 38 C.F.R. § 4.71a, Diagnostic Code 5252.
Diagnostic Code 5253 provides that a 10 percent rating is warranted for limitation of rotation of the thigh where the veteran cannot toe-out more than 15 degrees. A 10 percent rating is also warranted for a limitation of adduction such that the veteran cannot cross his or her legs. A 20 percent rating is warranted for limitation of abduction in which motion is lost beyond 10 degrees. 38 C.F.R. § 4.71a, Diagnostic Code 5253.
As for other Diagnostic Codes relating to the hip and thigh, the evidence does not show that either hip has evidenced a flail hip joint to warrant a rating under Diagnostic Code 5254 or ankylosis of the hip to warrant a rating under Diagnostic Code 5250. A rating is also not warranted under Diagnostic Code 5255, because the medical evidence of record does not demonstrate that there has been an impairment of either femur, to include fracture or malunion.
At the December 2010 VA examination, range of motion measurements for the Veteran’s hips were as follows: 135 degrees of flexion bilaterally, 50 degrees of external rotation, 40 degrees of internal rotation, and 40 degrees of abduction. All measurements were equal for the bilateral hips, and none changed after three repetitions.
The Veteran was afforded a VA hip examination in October 2017. The examiner noted a diagnosis of bilateral hip trochanteric bursitis, proximal TFL-IT band tendonitis with limited rotation of thigh. The Veteran reported chronic lateral pain in both hips, which would intensify from sore to sharp with walking or use. The pain was constant to touch bilaterally, was sharp and burning, and radiated down the sides of his legs. He also reported having flare-ups when he would lie on his side or walk. During flare-ups, the lateral hip pain increased from dull to sharp bilaterally. The Veteran stated he was having a functional loss or impairment due to the pain decreasing his range of motion. 
On examination, range of motion measurements were as follows for both hips: flexion to 110 degrees; extension to 0 degrees; abduction to 45 degrees; adduction to 25 degrees; external rotation to 40 degrees; internal rotation to 20 degrees. Adduction was not so limited to where the Veteran could not cross his legs. The examiner noted that the Veteran’s range of motion in each hip contributed to a functional loss in that he had decreased motion due to pain. Pain was noted on all ranges of motion and there was evidence of pain with weight bearing and tenderness or pain on palpation. There was no objective evidence of crepitus. The Veteran was able to perform repetitive use testing with at least three repetitions without any additional loss of function or range of motion. The examiner also concluded that the range of motion measurements would be the same for flare-ups and that pain significantly limited functional ability with flare-ups. No additional contributing factors of disability were noted. The examiner reported that the Veteran did not have ankylosis in either hip, muscle atrophy, a reduction in muscle strength, malunion or nonunion of femur, flail hip joint, leg length discrepancy, or any other pertinent physical findings, and that he did not use assistive devices to help with locomotion. The examiner wrote that he expected flare-ups to limit the ability of the Veteran to perform work requiring walking, lifting, and carrying due to pain, but that sedentary employment was not limited by the Veteran’s bilateral hip disability. He also remarked that the Veteran’s leg symptoms were caused by and consistent with the Veteran’s diagnosed bilateral hip condition.
The Veteran underwent a comprehensive musculoskeletal examination in January 2015 for his Social Security Administration disability application. Hip flexion was reported as being 60 degrees on the right and 80 degrees on the left.
Private treatment records were reviewed for the appeal period and showed that the Veteran was treated for his hip pain, which was worse in the right hip, with physical therapy, injections, and medication. A private treatment provider diagnosed greater trochanteric bursitis in April 2011. A May 29, 2012 treatment note indicated that his active and passive hip range of motion was normal, symmetrical, and pain free. The records did not show hip range of motion measurements reported in terms of degrees of motion.
The Veteran testified before the Board in October 2017 about his bilateral hip disability. As stated above, at the hearing, the Veteran reported that his back pain makes it uncomfortable for him to move or sit, so much that he would feel like he was sitting on glass, and it would radiate around to the hips.
Again, the Veteran also submitted multiple written statements in support of his claim. The Veteran submitted a statement in December 2011, wherein he wrote that he lived with pain at a level of at least seven out of ten all of the time. The pain in his back and hips was constant. The Veteran’s wife also submitted a statement in December 2011. She reported seeing her husband’s pain increasing to the point where it had become quite debilitating. She described difficulties he had going to church, to the grocery, and doing tasks around the house. She also stated that he tended to downplay the severity of his pain to doctors if she is not with him. The Veteran submitted another written statement in September 2013. He reported that the pain in his back and hips had gotten even worse over the previous year. Sitting, standing, and walking were all incredibly painful for him. The Veteran also wrote in his formal appeal to the Board in December 2014 that his condition had gotten worse. He stated that his back and hip pain had increased.
At no time during the appeal period did the Veteran demonstrate flexion of either hip to 45 degrees or less. As such, a compensable rating under Diagnostic Code 5252 for limitation of flexion is not warranted at any time during the appeal period for either the right or left hip. Further, neither hip has evidenced rotation limited to 15 degrees, adduction limited such that the Veteran could not cross his legs, or abduction limited beyond 10 degrees. Therefore, a compensable rating under Diagnostic Code 5253 is also not warranted at any time for either hip. However, the October 2017 VA examination reported extension of both hips was measured as 0 degrees. This meets the criteria for a 10 percent rating for each hip under Diagnostic Code 5251. It is not clear from the evidence when extension became so limited, but even if there was a time prior to the October 2017 examination when a compensable rating would not be warranted for limitation of motion, Diagnostic Code 5003 provides that a 10 percent rating will be assigned if no compensable limitation of motion rating is allowed. In other words, 10 percent is the proper rating assigned for each hip throughout the entire appeal period, and schedular ratings in excess of 10 percent are not warranted.
As previously discussed, in evaluating disabilities of the musculoskeletal system, it is necessary to consider, along with the schedular criteria, functional loss due to flare-ups of pain, fatigability, incoordination, pain on movement, and weakness. DeLuca v. Brown, 8 Vet. App. 202 (1995). Functional loss may be due to due to pain, supported by adequate pathology and evidenced by visible behavior of the claimant undertaking the motion. 38 C.F.R. § 4.40. Weakened movement, excess fatigability, incoordination, pain on movement, swelling, deformity, or atrophy of disuse are relevant factors in regard to joint disability. 38 C.F.R. § 4.45. Even if range of motion was slightly limited by pain, pain alone is not sufficient to warrant a higher rating, as pain may cause a functional loss, but pain itself does not constitute functional loss. Mitchell v. Shinseki, 25 Vet. App. 32 (2011). Rather, pain must affect some aspect of “the normal working movements of the body” such as “excursion, strength, speed, coordination, and endurance,” in order to constitute functional loss. Id.
The weight of the evidence indicates that the Veteran’s bilateral hip disabilities have not been so functionally limited as to warrant ratings in excess of 10 percent. For example, in December 2010, the VA examiner noted there was no further decrease in range of motion measurements after repetitive-use testing. In October 2017, the VA examiner noted that the Veteran’s range of motion in each hip contributed to a functional loss in that he had decreased motion due to pain. However, pain alone is not sufficient to warrant a higher rating. It has not been shown that the Veteran’s bilateral hip pain effectively limited his flexion to 45 degrees or less, limited his rotation to 15 degrees, prevented him from crossing his legs, or limited his abduction beyond 10 degrees. 
Here, as described, the weight of the probative evidence of record fails to demonstrate that the Veteran is entitled to disability ratings in excess of 10 percent for either his right or left hip disabilities. As such, entitlement to an initial rating in excess of 10 percent for a right hip disability is denied, as is entitlement to an initial rating in excess of 10 percent for a left hip disability.
REMANDED
The Veteran has asserted that he cannot work on account of his hips and back. While he does not meet the schedular rating criteria for a TDIU, his claim should be sent to the Director of Compensation and Pension for consideration of TDIU on an extraschedular basis.
The matter is REMANDED for the following action:
1. Refer the Veteran’s claim to the Director of compensation and Pension for extraschedular TDIU consideration. 

 
MATTHEW W. BLACKWELDER
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD C. Davidoski, Associate Counsel